MARCUS, Justice.
Emanuel Harrison died on February 17, 1960 without issue. He was survived by his second wife, Aria Day Harrison, and by his legal heirs: a sister (Ida Harrison Knox), a brother (Daniel Harrison), ten children of a predeceased brother, Minor Harrison, and three children of a predeceased sister, Ada Harrison George. Emanuel Harrison was also survived by his foster son, John D. Harrison, whom he never legally adopted.
A few days after Emanuel’s death, John D. Harrison found, in the glove compartment of Emanuel’s car, a document which appeared to be Emanuel’s will. The document was entirely written, dated and signed in the handwriting of someone other than Emanuel Harrison,[1] then was signed at the bottom in pencil by Emanuel Harrison. The document provided as follows:
Liberty, Miss.
Dec. 15, 1955
I, Emanuel Harrison, of East Feliciana Parish Louisiana, do make this my last will and testament, revoking all others, namely:
*1193 (1) I want all my just debts paid;
(2) I give and bequeath my 100 acres in East Feliciana Parish to John D. Harrison and his children;
(3) I also give and bequeath lot # 12 in sq. # 2 of North Baton Rouge to John D. Harrison and his children
(4) I futher [sic] give and bequeath ½ of all my personal property to John D. Harrison and his children.
Thus written, dated and signed in my own handwriting, at Liberty, Miss. Rt. # 2, in East Feliciana, State of Louisiana, on this the 15 day of Dec. 1955.
Emanuel Harrison
Emanuel Harrison
John D. Harrison brought this will to his attorney and was told that the will was invalid. However, the attorney drew up an instrument whereby Emanuel’s, legal heirs could confirm the donations made in the invalid will. Within a month of Emanuel’s death, John D. Harrison obtained the signatures of twelve of the fifteen intestate heirs on the instrument. On February 11, 1972, one more heir (Ada Harrison Johnson) added her signature when John D. Harrison purchased her interest in Emanuel’s succession. The instrument provided as follows:
March 21, 1960
The undersigned presumptive heirs of Emanuel Harrison, deceased, are fully aware of the contents of a purported last will and testament made by Emanuel Harrison dated December 15, 1955; that same is not in the handwriting of Emanuel Harrison, but was signed by him and represents his wishes with regard to his estate. We, therefore, desire that the Court give full effect to said will as though it was fully written, dated and signed by Emanuel Harrison as his legal will and testament, in consideration of the fact that John Harrison looked after him as his own child.
Aline George Annie Belle H. Wallace
Thelma G. Payne Catherine H. Vernon
Wilbert George E. M. Harrison
Cheles Price Harrison his
James Harrison Bro. Daniel X Harrison
(Sister) Ida Knox Ada Harrison Johnson
Viola H. Faulkner Feb. 11
Benjamin F. Harrison 72
John D. Harrison filed a petition in the district court to open the succession of Emanuel Harrison on March 10, 1960 and was appointed administrator of the succession on April 23, 1960. He moved onto the land that was left to him and his children in the invalid will and remained there until he was removed as administrator on July 21, 1977 because he had failed to file any account-ings. He was replaced as administrator on that date by Minor Harrison, Jr., one of the heirs who had not signed the March 21,1960 instrument. Minor Harrison, Jr. subsequently resigned as administrator and was replaced on July 19, 1979 by Edward Knox.
On May 7,1980, Edward Knox, as administrator, filed a petition to sell the land bequeathed to John D. Harrison in the invalid will at private sale in order to pay the debts of the succession and to facilitate a partition of the estate. The purchasers were to be Minor Harrison, Jr., his sister, Annie Belle Wallace (who had signed the March 21, 1960 instrument), and five of Edward Knox’s siblings. After publication in accordance with law, the court on August 25, 1980 authorized Edward Knox, as administrator, to sell the property at private sale to those persons for $51,750.
On February 26, 1981, before the sale took place, John D. Harrison filed a petition opposing the sale on the ground that he should be recognized as transferee of the interests of thirteen of the fifteen legal heirs in the property. He also alleged that the sale should be stopped because the property was worth “substantially more than the $51,750.00 sales price” and because the sale of the property was unnecessary to pay the “very small” debts of the succession. By amended petition filed September 9, 1981, John D. Harrison additionally asked that he be recognized as transferee of the interest of Ada Harrison Johnson in the succession pursuant to a recorded notarized act of cash sale. Edward Knox, in his capacity as administrator of the succession, answered denying that John D. Harrison had any interest in the succession property.
After trial, the district judge rendered judgment in favor of Edward Knox, as administrator of the succession, and against *1194 John D; Harrison declaring the purported transfer dated March 21, 1960 invalid, null and without legal effect. However, judgment was rendered in favor of John D. Harrison and against Edward Knox (as administrator) recognizing him as the transferee of the interest of Ada Harrison Johnson in the succession. The judge also set aside his previous order authorizing the sale of the property for $51,750, finding that price to be wholly inadequate, and authorized the administrator to put the property up for sale to pay debts of the succession.
John D. Harrison appealed seeking a reversal of that part of the judgment holding the instrument of March 21, 1960 unenforceable. The court of appeal reversed, finding that the March 21, 1960 instrument was given in fulfillment of a natural obligation imposed upon the legal heirs of Emanuel Harrison and was legally binding. In all other respects, the judgment of the district court was affirmed. The court remanded the case to close the succession.[2] On the administrator’s (Edward Knox’s) application, we granted certiorari to review the correctness of that decision.[3]
The issues presented for our consideration are whether a natural obligation on the part of the legal heirs of Emanuel Harrison arose from the invalid will and, if so, did the March 21, 1960 instrument have the effect of discharging that obligation.
The December 15, 1955 document clearly is invalid as the will of Emanuel Harrison because it fails to meet any of the forms for wills recognized under Louisiana law. The document does not qualify as an olographic will because such a will must be entirely written, dated and signed by the hand of the testator. La.Civ.Code art. 1588. Except for testator’s own signature at the end of the will, the document in question was entirely written in the hand of another. Nor does the document meet any of the other forms for testaments in Louisiana.[4]
However, this invalid will does create a natural obligation on the part of the intestate heirs of Emanuel Harrison under La.Civ.Code art. 1758 which provides:
Natural obligations are of four kinds:
1. Such obligations as the law has rendered invalid for the want of certain forms or for some reason of general policy, but which are not in themselves immoral or unjust.
2. Such as are made by persons having the discretion necessary to enable them to contract, but who are yet rendered incapable of doing so by some provision of law.
3. When the action is barred by prescription, a natural obligation still subsists, although the civil obligation is extinguished.
4. There is also a natural obligation bn those who inherit an estate, either under a will or by legal inheritance, to execute the donations or other dispositions which the former owner had made, but which are defective for want of form only.
Strictly applying .the language of this code article, we find that the natural obligation of the heirs of Emánuel Harrison fits precisely into section four of the article. First, the heirs clearly fall into the category of “those who inherit an estate ... by legal inheritance.” Next, we find that the invalid will constituted a donation “which the former owner had made.” Edward Knox contends that there is doubt as to whether Emanuel Harrison believed or intended the prepared form to be his will. However, we believe that the record supports the trial judge’s finding of fact that Emanuel Harrison “attempted to make a will” which “was intended to be valid pursuant to the rules on olographic wills.” Therefore, we concur in the trial judge’s finding and reject Knox’s contention that Emanuel may not have made the will.
Finally, article 1758(4) requires that the decedent’s donation be “defective for want of form only.” This element is also met by Emanuel Harrison’s will. It contains no prohibited donations or any other substan *1195 tive defects; it is invalid merely because it fails to satisfy the requirements of testamentary form. Knox argues that the formal invalidity is so severe that it amounts to a substantive defect. This argument is without merit; the defectiveness of the will in question is plainly one of form only no matter how severe the formal deficiencies.
Hence, we hold that Emanuel Harrison’s legal heirs have a natural obligation to execute the donations made in his will. This holding is consistent with the result reached by this court on rehearing in Breaux v. Breaux, 218 La. 795, 51 So.2d 73 (1951), in which we found a natural obligation on the part of a legatee to carry out the disposition made in an invalid oral will even though that disposition constituted a fidei commis-sum.
A natural obligation, although it cannot be legally enforced, does have certain legal effects. La.Civ.Code art. 1759 provides:
Although natural obligations can not be enforced by action, they have the following effeet[s]:
1. No suit will lie to recover what has been paid, or given in compliance with a natural obligation.
2. A natural obligation is a sufficient consideration for a new contract.
The natural obligation of Emanuel Harrison’s heirs acted as the cause for a new contract. That new contract was the March 21, 1960 instrument.
This court must now determine the effect of that instrument. A new contract for which a natural obligation acts as “consideration” cannot be fitted into any one accepted legal category and should not be subject to any particular form. The juridical act may embody any contractual obligation the obligor sees fit. Martin, Natural Obligations, 15 Tul.L.Rev. 497, 511-12, 515 (1941). To discern the intended effect of the instrument, we will first look to its actual terms. The document asks that “the Court give full effect to said will.” Knox argues that, since the instrument contains no language translative of title, it cannot be given the effect of transferring to John D. Harrison any interest in the succession of Emanuel Harrison. Instead, Knox urges, the instrument requests the court to probate an invalid will, an act which does not transfer title in the land to John D. Harrison. We reject this construction of the contract.' The Louisiana Civil Code provides the following rule for interpretation of contracts:
When there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties, rather than to adhere to the literal sense of the terms.
La.Civ.Code art. 1950. See also art. 1945(2). We find that the clear intent of the thirteen heirs who signed the instrument was to discharge their natural obligation and carry into effect the dispositions made in the will. Accordingly, we hold that the effect of the March 21, 1960 instrument was to transfer to John D. Harrison and his children[5] the interests of the thirteen heirs[6] who signed the instrument in the property bequeathed in the will to John D. Harrison and his children. Hence, we will remand the case to the district court with instructions to the trial judge to recognize John D. Harrison and his children as transferees of the signing heirs’ interests in the property and to place them into possession thereof and to close the succession.
DECREE
For the reasons assigned, the judgment of the court of appeal is affirmed and the *1196 case is remanded to the district court for further proceedings in accordance with law and the views herein expressed.
CALOGERO, J., concurs. The result in the case is correct.
WATSON, J., dissents with reasons.

. John D. Harrison testified at trial that the handwriting was that of William Kline, Emanuel’s attorney.

. 431 So.2d 1060 (La.App. 1st Cir.1983).

. 438 So.2d 569 (La.1983).

.The will is also invalid as a holographic will under the laws of the State of Mississippi, the place of execution according to the heading of the will. Miss.Code Ann. § 91-5-1 (Supp. 1983).

. Edward Knox, in brief to this court, specified as error the appeals court’s decision that “apparently gave all of the signing heirs’ portion of the property to John D. Harrison when , the ‘purported will’ ... bequeathed certain specified items [of] the decedent’s property to John D. Harrison and his children.” [Emphasis in original.] The appeals court held “the [March 21, 1960] instrument and the transfers made thereby to be legally valid and enforceable.” We construe that language to uphold the instrument as written, which enacts the bequests in the will to John D. Harrison and his children. Hence, the appeals court’s holding does not omit the children and is without error in this regard.

. However, Ada Harrison Johnson’s entire interest in the succession was transferred to John Harrison in the February 11, 1972 sale of that interest.