509 So.2d 495 (1987)
Joseph GAUTREAU, Plaintiff-Appellant,
v.
SOUTHERN MILK SALES, INC., Defendant-Appellee.
No. 86-464.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1987.
*496 Gary Theall of Theall and Fontana, Abbeville, for plaintiff-appellant.
Michael Tomino, Jr. and Randall A. Karr, of Broadhurst, Brook, Mangham & Hardy, Lafayette, for defendant-appellee.
Before FORET, DOUCET and KNOLL, JJ.
KNOLL, Judge.
In a sequel to Gautreau v. Southern Milk Sales, Inc., 463 So.2d 1378 (La.App. 3rd Cir.1985), Joseph C. Gautreau (Gautreau) appeals the disposition of his second claim against Southern Milk Sales, Inc. (Southern Milk) for tortious conversion. The trial court: (1) awarded Gautreau $250 general damages for Southern Milk's unauthorized retention of $333.67 a month from Gautreau's share of milk proceeds; (2) awarded Southern Milk $2002 for the loss and disposal of milk contaminated by antibiotics from Gautreau's dairy; and (3) credited Gautreau for all amounts previously withheld by Southern Milk. Gautreau contends the trial court erred: (1) in failing to hold Southern Milk's actions constituted an unfair trade practice which subjected it to attorney's fees; (2) in excluding evidence of Gautreau's dairy income for prior years; (3) in excluding evidence that Southern Milk was trying to put him out of business; (4) in failing to make an award for lost income; (5) in awarding inadequate general damages; (6) in failing to order Southern Milk to return the money wrongfully withheld together with interest; (7) in finding that he sold Southern Milk contaminated milk; and (8) in allowing Southern Milk to recover transportation costs to dispose of the milk. We affirm.

FACTS
The relationship between Gautreau and Southern Milk, i.e., that of dairy farmer and milk cooperative, was fully explained in our earlier opinion which we incorporate herein by reference.
The facts giving rise to this litigation are that Southern Milk alleges that on March 5, 1984, Gautreau and another dairyman contaminated a load of milk with antibiotics. Southern Milk withheld $333.67 a month from Gautreau's share of milk proceeds until the $2002, the value of one-half the milk loss and the charges for disposal of the contaminated milk, was fully paid. As in the prior case heard by another panel of this court, Gautreau never consented to the monthly withholdings and promptly objected to Southern Milk's collection procedure.

UNFAIR TRADE PRACTICE LAW
Gautreau claims that he is entitled to attorney's fees under LSA-R.S. 51:1405(A) *497 and 1409(A), the Louisiana Unfair Trade Practices and Consumer Protection Law.
LSA-R.S. 51:1405(A) provides:
"Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."
LSA-R.S. 51:1409(A) provides:
"Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages. If the court finds the unfair or deceptive method, act or practice was knowingly used, after being put on notice by the director or attorney general, the court shall award three times the actual damages sustained. In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney's fees and costs. Upon a finding by the court that an action under this section was groundless and brought in bad faith or for purposes of harassment, the court may award to the defendant reasonable attorney's fees and costs."
What constitutes unfair trade practices is left up to the courts. Dufau v. Creole Engineering, Inc., 465 So.2d 752 (La.App. 5th Cir.1985), writ denied, 468 So.2d 1207 (La.1985). A trade practice is unfair when it offends public policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Coffey v. Peoples Mortgage & Loan of Shreveport, Inc., 408 So.2d 1153 (La.App. 2nd Cir.1981).
In Gautreau, supra, another panel of this court concluded that Southern Milk's actions, though constituting tortious conversion, did not amount to an unfair trade practice. Without citing authority for his proposition, Gautreau now submits that the recurrence of this tortious conversion constitutes an unfair trade practice per se. We disagree. This second instance of conversion occurred prior to the rendition of the first Gautreau decision. At that time the trial court found that Southern Milk's actions were not tortious, and it was not until our earlier opinion was rendered that Southern Milk was notified that its collection procedure was tortious. Considering the law and evidence now before us, we find nothing to sway us from our earlier holding in Gautreau that Southern Milk's actions do not constitute an unfair trade practice.

EVIDENTIARY RULINGS
Gautreau contends that the trial court erred in excluding evidence of his prior years' earnings from dairy production, and of his reasons for believing Southern Milk was trying to put him out of business.
Evidence must have some probative value and be reasonably connected to the transaction in question. In assessing the relevancy of evidence the trial court is granted a great deal of discretion. Dubois v. State Through Dept. of Pub. Safety, 466 So.2d 1381 (La.App. 3rd Cir.1985).
In the present case the milk contamination which provoked Southern Milk's withholding of proceeds occurred on March 5, 1984. The income records Gautreau attempted to introduce at trial began in 1979. Accordingly, there was no error in the trial court's exclusion of this item of evidence.
At another point in the trial Gautreau's attorney attempted to elicit the reasons why he thought Southern Milk was trying to put him out of business. Gautreau attempted to testify that the district manager of Southern Milk told someone else that it would teach Gautreau a lesson. In ruling on the admissibility of this testimony neither Southern Milk nor the trial court specified the grounds on which the testimony was excludable. In argument, prior to proffering the evidence, Gautreau contended that the proposed testimony was not hearsay because it was not being offered for the truth of the statement, and that its purpose was to establish the basis for his perception that Southern Milk was trying *498 to put him out of business. Gautreau renews this argument on appeal.
The effect of the proffered statement was the establishment of Gautreau's mental state. As such, the statement, whether or not it was hearsay, was irrelevant to the issue of Southern Milk's tortious conversion. To argue that Southern Milk's actions constituted a concerted effort to put him out of business is too remote and tenuous. Therefore there was no error in the trial court's ruling.

FAILURE TO AWARD DAMAGES FOR LOST INCOME
Gautreau argues that since Southern Milk was trying to put him out of business he had no alternative purchaser of his milk; therefore, Southern Milk's harassment forced him to curtail his production, causing him to lose income.
The plaintiff bears the burden of proving the facts which support his claims by a preponderance of the evidence.
Whether there existed another milk marketing cooperative available to Gautreau was a contested fact. No testimony regarding this issue was adduced from Gautreau, and the only testimony on this question was that of Terry Chaisson, an independent milk hauler, who stated another milk cooperative operated in the area. Accordingly, Gautreau failed to establish his claim for lost income.

GENERAL DAMAGES
Gautreau contends that the trial court's award of $250 general damages constituted an abuse of discretion and should be raised to $5000.
Before an appellate court can disturb an award by a trial court, the record must clearly reveal that the trier of fact abused its discretion in making its award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). Once an appellate court has determined that the trial court abused its much discretion, it can disturb the award only to the extent of raising it (or lowering it) to the lowest (or highest) point which is reasonably within that court's discretion. Freeman v. Harold Dickey Transport, Inc., 467 So.2d 194 (La. App. 3rd Cir.1985).
The trial court noted that Gautreau's damages as a result of the tortious conversion are not great, and the record shows that they are not as extensive as those incurred in the prior litigation between the parties. During a six month period Gautreau did not receive the full amount Southern Milk owed him. He also testified that because he did not have access to the withheld funds he had to explain to his creditors that he could not pay them on a monthly basis. However, unlike the earlier Gautreau opinion, there was no evidence that any of the monthly allotment checks Gautreau authorized Southern Milk to pay to his creditors was less than required. Accordingly, we can not say the trial court abused its discretion in awarding general damages of only $250.

REIMBURSEMENT
Gautreau contends the trial court should have ordered Southern Milk to reimburse the withheld funds. We disagree. Since the trial court found Gautreau was liable to Southern Milk for the contaminated milk, it would be senseless to order Southern Milk to return the money.

CONTAMINATED MILK
Gautreau next disputes the trial court's factual finding that his milk was again contaminated.
A trial court's factual findings and credibility evaluations are entitled to great weight and will not be disturbed on appeal unless shown to be clearly wrong. Sauce v. Williams, 434 So.2d 613 (La.App. 3rd Cir.1983).
The same method for testing for the presence of antibiotics in milk was used in this case as the one utilized when these same parties were earlier before us. It was uncontradicted that the separate tests run by Southern Milk and the Louisiana Department of Health on samples from Gautreau's milk were positive for the presence of antibiotics. Likewise, Gautreau *499 has failed to show any break in the chain of custody of the milk samples which would cast suspicion on the test results. Furthermore, Gautreau's own testing of the milk sample by an out of state laboratory produced results which were at best inconclusive. Under these circumstances we cannot say that the trial court was manifestly erroneous in its conclusion that Gautreau's milk was contaminated with antibiotics.

DISPOSAL OF THE CONTAMINATED MILK
Gautreau contends that the trial court erred in making him liable for the cost of disposing the milk. The prior Gautreau decision is dispositive of this issue. The policy adopted by Southern Milk's board of directors on September 5, 1980, became part of the contract Gautreau signed, and accordingly Gautreau is liable for the disposal costs.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellant, Joseph Gautreau.
AFFIRMED.